Mr. Carey, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. Good morning. The District Court decision here on summary judgment striking down the 400 patent was doctrinally unsound and should not be left on the books. The decision resulted from the District Judge's misunderstanding of basic patent law and a rush to dispose of the case on the eve of trial. As indicia of unreliability, the summary judgment decision is riddled with errors, appears quite hastily put together. Let me start with the obviousness aspect of this. Yes, Your Honor. Tell me why it was not proper for the District Court to conclude, as it did, that common sense gets you to only this fourth part, which is just the try-again part, and that common sense was sufficient. Why is that not appropriate under our case law and certainly a reason to avoid conflicting testimony on this issue? Your Honor, I believe the answer is actually very simple. This Court's precedent, in Reserco in particular, requires that when common sense be used in the obviousness analysis, that it be based on some evidentiary foundation in the record. Here, the Court's idea about common sense and the common sense that it applied to invalidate the patent had absolutely no evidentiary foundation. Essentially, the Court here, the District Judge, struck this patent down as obvious based on its own notion of common sense and attorney argument about common sense. There was no evidence in the record at all. You mean common sense cannot be applied to the obviousness analysis without some sort of documentation or testimony about what common sense is? That is exactly what this Court said in Reserco, Your Honor. Let me quote. This is 258F3rd 1379 and 1385-86. This was a Federal Circuit review of a Board decision. Before KSR? Yes, Your Honor. It was before KSR. Right. KSR, obviously, as we all know, deals with the reference to common sense and allows that if something's likely the product of common sense, it might show obviousness. Isn't that correct? Don't we apply that? Is there some caveat to that common sense notion that requires some underpinning of factual resolution? Your Honor, when KSR was talking about common sense there, I believe it was talking about using common sense to combine multiple references for an obviousness analysis. And it was addressing whether or not this Court's prior teaching motivation test was the sole basis upon which to combine references. And the Supreme Court in KSR said the inquiry is not limited to the teaching suggestion motivation to combine tests. Common sense can also be used to combine the references. So doesn't that signal a shift away from the, shall we say, the views that were prevalent at the time of Reserco? No, Your Honor, because common sense still has to be proved. It can't be conjured up out of thin air. It can't be the sole result of attorney argument and fiat. It's got to be based on evidence. And KSR said— Are these things so apparent that a consensus of common sense might be applicable? Do we need experts? I mean, in this case, what's the inventive feature here? It's try it again if it doesn't work, right? I disagree, Your Honor. I think that's a mischaracterization of the steps of the patent. Trying again would have been in the context of this invention. Emails were sent out. Some didn't go through. Trying again would be send them back out again, see if they go through next time. That's not what this invention was. In fact, that was one of the inefficiencies that people in the art were experiencing back in the days of dial-up Internet connections, because you spent a lot of money and time on bandwidth, which was very expensive, and it was very inefficient to do a bulk email distribution over a dial-up Internet connection. Well, maybe try again is not the right phrasing, but if you want to send out 500 messages, you send out 500 and only 400 get through. Isn't it common sense that if you come up short with 100, so you send 100 more? Well, Your Honor— It's not try again, but you send 100 more. Your intent was to send 500. Only 400 got through. What else would you do but send another 100? The problem with that question, I believe, is that it posits the invention as one of the alternatives and uses hindsight against the teacher, and that's not supposed to be done. I don't understand what you mean by that. Well, to say, Your Honor, that why not do what the patent says is step four, isn't that the obvious way to do it, is to include step four, which there is no priority. It's not hindsight. It's just a reflection of what common sense would have suggested at the time. Well, Your Honor, if that were common sense, the evidence of it is not common because there is none of it. There is no evidence of that ever happening prior to the priority date of this patent application. There is simply no evidence. And Zerko made it quite clear that common sense must have an evidentiary foundation if it's to be used. You can't apply common sense unless you can prove that it happened before. No, Your Honor, I'm not going that far. I'm saying if a defendant in a patent case is going to rely upon common sense, either to supply an entirely missing element to invalidate the patent or to combine references, that common sense has to be based on some evidence. What evidence? Evidence of what? Well, they could have put on expert testimony evidence, which they did not. Expert testimony evidence of what? Of what would have been common sense to one of skill in the art at the time of the invention. That would have been some evidence of common sense. What kind of expert do you need to do that? I mean, just one skilled in the art becomes an expert. Anyone skilled in the art has the common sense of how one skilled in the art would have done it. Well, Your Honor. One of ordinary skill in common sense. It wouldn't be one of ordinary skill in common sense, Your Honor. It would be an expert who would opine about the scope of knowledge of one of ordinary skill in the art, including what would have been common sense to such a person, having the skill that they have and the education level that they have, et cetera. Here, I'm not suggesting that expert testimony would be the only way to do it. I suppose that an accused infringer could put on people who worked in the industry. I'm not suggesting any particular limitation on what evidentiary foundation might be required. I'm just suggesting, based on Zerko, which is pretty clear, that there has to be some evidentiary foundation to use common sense, especially on summary judgment, where all the inferences and doubts have to be resolved in favor of the non-movement. Here, the patent. Can I move you from common sense to fundamental principles? Yes, Your Honor. Bilski, one can argue, left open the question. I mean, it did limit the use of a machine. Here, you've got a machine. You've got email. But why is that sufficient in this case, when you're dealing with a method that could be performed? I mean, advertisements can be performed without a machine. So now you're doing what otherwise could be done by sending regular mail or postage or any kind of advertisement, and you've added on a machine. Why isn't that sufficiently post-solution activity, the add-on machine, and therefore sufficient to save us under 101? Because the limitations in this patent are meaningful and do limit the claim to email communication between computers and not to anything outside of that that wouldn't be tied to the use of a machine. But the adjustment can be manual here, right? Well, not the transmission of email. No, no, of course not. But the decision, what's being patented here, is potentially the decision to resend the email. That doesn't require a use of a machine, right? That's human thinking. Well, Your Honor, what this Court has instructed... No, but answer the question. Isn't that human thinking, the step of deciding whether to resend the email? That's human thinking, right? Well, that step is not just deciding whether to send the email. That step is also rematching the target profile to the group, and it's also retransmitting. So that step, that step four, which there's no evidence of in the prior at all, that step is not just deciding whether to send an email.  after you rematch a profile to a group. So those other parts of that step include statutory subject matter. And this Court in Bilski made very clear that we're not to take in isolation a particular step in a process claim. We're supposed to look at it as a whole. So even apart from step four, step two is the transmission of email, email communication between computers, and that is, I believe, pretty clearly statutory subject matter. Suppose that somebody tried to get a patent on a method of typing in which the patent said, well, use your little finger for keys X and Y or whatever, and the other fingers for other keys. Could you get a patent? Would that be patentable subject matter? Your Honor, I don't know, to answer your question. Of course, it would depend on exactly what the limitations of the claim were. Well, I think I described it to you. The limitations of the claim tell you which fingers to use on which keys. It's a method of operating a typewriter, and it just tells you how to use your fingers. I don't believe that that is comparable to here where we have the transmission of electronic mail by one computer to another. I understand, but is it patentable? I'm not sure, Your Honor. I don't know the answer to that question. I'm sorry. If you were to feel on the 101 issue with Claim 1, is it your argument that there are other arguments and a different result arguably required for Claim 11? I believe that Claim 11 does entail a different analysis, and potentially I think the case for 101, the argument, the defendant's argument for 101 is much weaker on Claim 11. The judge conflated the two, correct? The judgment did conflate the two, and the judgment quite disturbingly conflated 101 patent eligibility with concepts of novelty and obviousness from Sections 102 and 103. Another reason which I think this entire decision is dubious and illustrates that this district judge did not understand basic concepts of patent law, and one of the reasons why this decision should not be left on the books. This is a very aberrant decision that is quite wrong on basic patent law concepts. Thank you. All right. We're into your rebuttal. We'll reserve the balance of your time. Good morning. Good morning. May it please the Court. Before you begin, I was informed that you were somewhat tardy this morning. I apologize to the Court for that, Your Honor. The weather had a bigger effect on traffic than I anticipated this morning. It's important that you appear promptly, as it disrupts the operation of the clerk's office in getting the arguments scheduled. I sincerely apologize, Your Honor. All right. Very good. Please proceed. The 400 patent in suit is invalid as obvious because it claims a four-step method for managing an email marketing campaign in which the first three steps are admitted to be known in the prior art, and the fourth step consists of nothing more than doing those same three steps over again if not enough emails have been successfully delivered. What's the standard for common sense? My common sense, Judge Dyke's common sense, Judge Lynn's common sense? I mean, how do we apply, you know, I mean, it seems like it's inherently subjective to apply common sense. Well, there are a couple of ways to approach the question, Your Honor. First of all, we do have expert testimony in the record as reflected on page 20 of our brief. But there was a dispute on that. I mean, right? If you start relying on expert testimony and common sense, don't you get into a, I mean, we're dealing with summary judgment here. Well, no, there wasn't a dispute about that. The expert testimony about common sense was entirely unrebutted in the record. And if the court will look at page 1957, I think, if you'll just give me one moment to check that. Yes, 1956 to 1957. That is the only statement by Perfect Web's expert, by the other side's expert, regarding obviousness and the application of common sense. And what is striking about that passage is that he does not consider any of the references that were the subject of the district court's opinion below. He picked three other patents, which are no longer at issue here, and said that looking at those patents, he didn't think that people could bridge the gap between them and the prior art. But he never issued an opinion saying that someone who knew about steps A, B, and C would not find it obvious to add step D in the event that there was a shortfall in the number of successfully delivered emails. So just in terms of what the record shows, we have testimony from two of our experts saying that this would have been apparent to a person of ordinary skill in the art of the time. That's unrebutted. Leaving that aside... Yeah, I thought the judge ultimately concluded that the expert debate is of no consequence in this context. Even leaving that aside, I think the answer to the question can be found in KSR, where the court said... Before you go on to that, don't leave that page, because in paragraph 57, on 1957, he says, it's my opinion that mere common sense and a general knowledge in the art by one of ordinary skill would not render the asserted claims of the 400 patent obvious. Right. He says, accordingly, and that's referring back to... You have to begin reading on page 55 at the bottom of the previous page. The heading is, Obviousness based upon common sense and knowledge of one of skill in the art. And in paragraph 55, he says, I looked at these three patents, which he says are non-analogous art, and looking at that, you wouldn't think to put them together, and therefore you would not have a gap that could be bridged by common sense. Do you agree that our pre-KSR authority requires evidence of common sense? That the pre-KSR authority requires evidence of common sense? They say In Re Zerko requires you to have evidence of common sense. Well, there is a series of pre-KSR cases, and I believe they all take place in the context of review of patent office examiner actions, where a patent examiner rejects a patent on the basis of obviousness, and there is an assertion that, well, you have to point to something. You can't just say, well, it's obvious to the examiner. You have to point to something. You have to give some reason why we would think it is obvious. That is, I think, the teaching of the early cases. It's an evidentiary requirement, right? It's a requirement that you supply the reasoning as to why it's common sense. I believe that is correct, Your Honor, yes. But what KSR says, which is very helpful, and this is a passage that we quote at page 19 of our brief. It can be found at 127 Supreme Court, 1742. What the Court says, and this gets us beyond the expert testimony point, when there is market pressure to solve a problem and there are a finite number of identified predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation, but of ordinary skill and common sense. And so the key facts that we have here are, we have the market pressure to solve a problem and the finite number of options available to the person of ordinary skill in the art. A person of skill in the art in April of 2000, when this application was filed, having just sent matched target recipients with the recipient profile, transmitted email to that group of recipients, calculated the number of successful deliveries, and discovered that he had a shortfall, such a person would have a market pressure to deliver, to complete the number of deliveries that was ordered by the customer. And there are a limited number of options that such a person has in responding to the situation. You either stop sending emails and just charge the customer for what was delivered, or else you get some more emails and you send out more emails. Now, Dr. Krishnamurti says, well, perhaps instead of rematching and getting new email addresses, you would bang your head against the wall and keep sending them to the addresses that you weren't able to get through the first time. I would submit that's not a logical response to the situation when you've just found out that delivery was unsuccessful to those addresses. But even admitting that as a possibility, it doesn't negate the fact that you've got three basic options. And given that finite number of options and the technical simplicity of the options, there's nothing new about them because they're just doing what you finished doing a moment ago. A person of ordinary skill in the art has reason to choose the option of rescinding rather than stopping because nobody wants to leave money on the table, and because customers expect that the orders they place will be fulfilled. And for those reasons, I think the obviousness of this case is clear. I'm having some problems with the 101 analysis here, so maybe you can help me out. Bilski and Deer, I mean, their concern is with the fundamental principle that would preempt substantially all uses of that principle. And in this case here, let's call it try again, even though we can call it something else. It's limited, in the claims at least, clearly it's limited to emails. I mean, it doesn't preclude other uses and other contexts. So tell me why this doesn't pass muster under that analysis, under Deer and Bilski. Well, it's clear from Fluke, from the Supreme Court's Fluke decision, that simply limiting a principle to a particular field of use is not enough to confer patentability. There in Fluke you had calculations that were used in connection with the, I believe it was the catalytic reduction of hydrocarbons or something like that. But do you agree that here the only thing that's limited, the use of this principle, which we'll call try and try again, is in this very narrow, limited and articulated context of resending emails? I mean, claim D is confined to the steps of, part D, 1D, is confined to the steps of A through C. It seems to me quite limited  or really very many uses of this principle. Well, but under the machine or transformation test as articulated in Bilski, they have to identify either a specific machine or a transformation or reduction of a particular article to a different state or form. And what they have argued is that a computer is a specific machine. It's not just the computer, it's the computer interacting with the Internet, interacting with the computers at the recipients. Well, but the claim doesn't actually say any of that. The computer just says send email. And in principle, one could send email between two computers hooked up on a desk. It doesn't claim the Internet. It doesn't claim a particular arrangement of items. No, but all of that apparatus is implicated by that. This is not simply a field of use. It's well beyond a field of use. Well, you know, we would submit respectfully that the claim doesn't say any of that, nor does the specification. This is very much unlike, for example, the Blackberry case, the RTP against... Let's assume that it did. What about the hypothetical I gave to a present counsel about a method of typing? A typewriter is a machine that tells you a method of using the machine, which is in some ways similar to this. This tells you there's the email structure. It tells you how to use the email structure, but it doesn't require... It's not a method that's performed by the machine. It's performed by the human directing the machine. So what about a method of typing? Is that patentable? I find it hard to believe that a method of typing could be patentable. I suppose if one had a very specific machine, if one had... If the claim were directed to, to take an example like Abley, if it were a keyboard for operating a CAT scan machine or an electrocardiogram, maybe... Well, that's a patent on the keyboard. Nobody questions that you could get a patent on a keyboard. This is not... My hypothetical doesn't involve a new keyboard. It's just an existing machine, and it tells you how to operate it using your fingers. Well, again, if... I think it might depend on how specific the machine is. If the method of using the machine is tied to a specific concrete machine and not any general-purpose computer or any keyboard attached to any machine in the world, maybe. But I think if it's just a method of operating a keyboard... It's a method of operating an ordinary typewriter. Is it a new use for an old product? I'm just trying to think of how this would line up with the test. It certainly doesn't... It doesn't seem like a transformation of matter. So it really turns on the machine prong of the test, and the question is, how specific does the machine have to be? And I guess I would argue that... The issue is how close... What does it mean to be tied to a machine? Does the machine have to perform the process, or can a human perform the process using a machine? The method of utilizing a machine, that's really what this patent is about. It's a method of utilizing the machinery that's involved in sending emails. Is that patent? And I guess I would argue, although I have not thought about it in these terms before, I think I would argue that a method of using a machine, in general, has to be patentable subject matter. If one considers a method of using a... I don't know, an optical disk drive to record information onto an optical disk, surely that has to be patentable subject matter, because there's a very specific kind of machine that is implicated. And then we get into this sort of funny continuum, you know, how general... If it's a method of using any machine, then that's clearly not good enough. Well, you can't do email without a machine, right? We all agree with that. But any computer... Right, okay. So if you can't do email outside of a machine, why isn't that what you just said? Well, it can't be the case that any machine is good enough. I mean, in Benson, in Gottschalk against Benson, the Supreme Court said that the algorithm in question was usable really only in the context of a digital computer, but nevertheless it was not patentable subject matter. So it was tied to a computer generally, but that wasn't good enough there. And similarly, the use of computers in Fluke to carry out calculations was not enough to save that case from not patentability. Well, yeah, and they spell out... I mean, I think Deer said, too, we might be evaluated differently if it's insignificant or unsubstantial post-solution activity. I just have a hard time saying that email, if you acknowledge that that inherently involves a machine, requires a machine, that that's insignificant post-solution activity. The use of the machine is insignificant post-solution activity. Well, there is a recent case from the District Court cited in our briefs, although I'll be it for a different proposition that may be instructive on this point. It is the Cyber Source Corp. v. Retail Decisions, Inc. decision. It's from the Northern District of California earlier this year, and Judge Patel considered a patent that was a method of detecting fraud in credit card transactions between a consumer and a merchant over the Internet. And so I don't think anyone denied that it was an Internet patent. It required machines that were connected to the Internet. And yet, in a careful analysis, the Court determined that these sorts of general-purpose computers hooked up together are so pervasive that the limitation to the Internet, just like the limitation to a computer generally, was not a substantial limit on the applicability of the principle. So here we would argue simply that so many computers, so many different machines can be programmed to do e-mail from a BlackBerry to a big server to anything else that it's not a meaningful limitation. But even accepting what you say there, isn't there a distinction to be drawn between Claim 1 and Claim 11? Claim 11 is to the device, right? Not to the method, not to the process? Claim 11 is to a machine-readable storage that contains the instructions. Right, which is some sort of device, like a DVD or something. Well, again, it doesn't say what kind of device it is. It doesn't say what particular machine. It is some sort of medium. It is some sort of storage, certainly. And then we get into the question, it is written in the so-called Beauregard format, and that raises the question whether Beauregard claims are statutory subject matter or not. I think that's a question that this Court has never squarely addressed. It seems to me quite a different question than Beauregard. Well, Claim 11, now I'm talking about. I'm so am I. What you're doing is you're saying, on the hypothetical, that something that was unpatentable subject matter, suddenly you choose to use a machine to implement it becomes patentable subject matter. We suggested in Bilski that the incidental use of a machine to do something which was otherwise unpatentable wouldn't be patentable. Would not be patentable. Right. Right, and that's the principle that we think is at work here. If the method itself is so general as to be unpatentable, then simply storing the instructions for the method on a computer-readable medium would not be enough to confer patentability. But, as my time has grown short, I'd like to just close by saying that as interesting... One final comment. I apologize. Final comment. As interesting as the Section 101 issues are, if the Court concludes that the patent is invalid for obviousness, it is not necessary to reach those issues. And I would direct the Court to page 2602 of the Joint Appendix, where the inventor of the patent describes this method, saying that each step represents the logical and efficient path a business or any user would undertake in a successful opt-in email marketing and management enterprise. All right. Thank you very much. We have your argument. Mr. Carey. Yes, sir. Thank you. Let me start by saying that the Zerkle rule about common sense was an evidentiary rule. In fact, it specifically said, and I quote, referring to the lower tribunal's decision, this assessment of basic knowledge and common sense was not based on any evidence in the record and therefore lacks evidence support. This Court reversed, clearly talking about common sense having an evidentiary component. And, again, the Graham factual inquiries about level of skill in the art and scope of knowledge, etc., are all factual inquiries. All four of those are factual issues. This is part of that. It requires an evidentiary foundation. My esteemed colleague referred to my client's expert witness and what he said about common sense, and he said common sense wouldn't have supplied this. Notably, what he did not say was anything that his side offered. His side offered no evidence at all in this. Again, in the Court's opinion, it makes this pretty clear, the Court's decision on common sense is premised entirely on the Court's own notion of common sense as advocated by the defendant's attorneys. Even Ms. Brady, the expert witness that was offered by the defendant for invalidity, in her declaration, which she submitted in support of the motion for summary judgment of invalidity at Joint Appendix 2747, paragraph 42, this is where she talks about step 4 and is very instructive to look at what she says. She says that step 4 was known in the art and she gives a couple of prior art references. She doesn't say anything about common sense supplying step 4. Now, after that declaration was given, the defendant abandoned that position and stipulated that none of that art showed step 4. Ms. Brady's declaration in support of step 4 that she offered to the Court in support of summary judgment was entirely wrong. It was unreliable. It said prior art showed step 4 when they abandoned that position and it conceded that no prior art showed step 4. And nothing in her declaration that was filed in support of the motion said anything about common sense or what one of us still in the art would have known or not known, etc. So, here again, the obviousness of the decision respectfully should be vacated and remanded for trial. They may win at trial, but we have to have some evidence. On summary judgment, all reasonable inferences of fact have to be drawn in the non-movement's favor. And the district court here ignored that important rule of law and essentially drew the inference in their favor. And that was wrong. It shouldn't stand. Thank you very much, Mr. Carey. The case is submitted.